UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Connie Lee | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Milord Keshishian | Jeffrey Kobulnick |
| | Michael Bernet |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Dkt. 27, filed Nov. 11, 2017)

## I.    INTRODUCTION

On March 29, 2017, plaintiff L.A. Gem & Jewelry Design, Inc., a California corporation, filed a complaint against defendants An & Associates Co. Inc., a Canadian corporation ("An & Associates"), and its principals and/or owners Amar Gandhi and Nirav Gandhi. Dkt. 1. On June 9, 2017, plaintiff filed the operative amended complaint against defendants. Dkt. 13 ("FAC"). The FAC alleges that all defendants are citizens and residents of Canada. Id. ¶¶ 6-8. Plaintiff alleges that defendants have infringed plaintiff's copyright in certain jewelry by marketing, selling, and distributing identical or substantially similar jewelry. See FAC.

Plaintiff asserts two claims: (1) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq., and (2) contributory or vicarious copyright infringement. Id.

On November 2, 2017, defendants filed the instant motion to dismiss plaintiff's FAC, Dkt. 27 ("MTD") and submitted declarations from Amar Gandhi ("Amar Decl.")[1] and Nirav Gandhi ("Nirav Decl."). Plaintiff filed its opposition on November 13, 2017, Dkt. 27 ("Opp'n"), and submitted declarations from Nicolas Anwandter ("Anwandter

---

[1] Because two defendants share the same last name the Court will refer to them and their declarations by their first name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Decl.") and Charity Graham ("Graham Decl.") as well as evidentiary objections[2]. Defendants filed a reply on November 20, 2017 ("Reply"), and submitted additional declarations from Amar ("Amar Suppl. Decl.") and Nirav ("Nirav Suppl. Decl."), a request for judicial notice,[3] Dkt. 33, a response to plaintiff's evidentiary objections, Dkt. 34, as well as their own evidentiary objections to plaintiff's evidence, Dkt. 35. On November 27, 2017, plaintiff filed its response to defendants' evidentiary objections, Dkt. 37.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

Plaintiff alleges the following facts.

Plaintiff designs and creates jewelry which is sold by national retailers.  FAC ¶ 11. Between 2011 and 2013 plaintiff created three original pendants, registered each pendant with the United States Copyright Office, and received a copyright registration for each one.  Id. ¶¶ 15, 24, 35.  Plaintiff also created one derivative pendant (collectively "pendants").  Id. ¶ 26.  At all times plaintiff has been and still is the sole proprietor of all rights, titles, and interests in the copyrights of the pendants.  Id. ¶¶ 18, 27, 36.  The pendants have been manufactured and /or distributed by plaintiff, or under its authority. E.g., id. ¶¶ 18.  Plaintiff has never authorized defendants to copy, reproduce, manufacture, duplicate, or distribute any of the pendants.  Id. ¶¶ 19, 29, 38.

---

[2] Unless otherwise noted, the facts the Court relies on are uncontroverted.  To the extent that a party objects to the evidence cited, the objection is overruled.  The Court does not reach objections to evidence it does not rely on.

[3] Plaintiff requests that the Court take judicial notice of Hand & Nail Harmony, Inc. et al v. International Nail Co. et al, CV 15-2718 SJO (AJWx) (C.D. Cal. May 6, 2015).  Dkt. 33, Ex. 1.  The Court need not judicially notice an opinion in order to rely on its holding.  However, in this case the Court finds that Hand & Nail Harmony to be distinguishable for the reasons discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Plaintiff alleges upon information and belief that defendants have infringed plaintiff's copyrights by marketing, manufacturing, distributing, duplicating, and/or selling unauthorized copies of plaintiff's pendants across the country, state, and district. Id. ¶¶ 2–3, 20, 30, 39. Defendants' infringing products were substantially or strikingly similar to the pendants and were sold on websites operated by defendants including ashleyjewels.com, boardwalkbuy.com, florencescoveljewelry.com, efamilymart.com, ramadeals.com, 99santa.com, menpura.com, zulily.com, as well as other websites like Groupon, and Facebook, all without plaintiff's consent. Id. ¶¶ 6, 21, 31, 40. The FAC also provides side by side comparison pictures between the pendants and defendants' allegedly infringing products. Id. ¶ 42.

## III. LEGAL STANDARDS

### A. Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The plaintiff's alleged version of the facts is taken as true for purposes of the motion if not directly controverted. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quotation marks omitted). Any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." AT & T, 94 F.3d at 588–89 (quotation marks omitted).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### 1. Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The Ninth Circuit generally uses a purposeful direction analysis (as opposed to purposeful availment) when an action sounds in tort; this includes copyright infringement actions. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). Purposeful direction is analyzed under the "effects test." Calder v. Jones, 465 U.S. 783, 787–89, (1984); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Under the "effects" test, "the defendant must have allegedly: (1) committed an intentional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam) (quoting Schwarzenegger, 374 F.3d at 803). A foreign act with foreseeable effects in the forum state does not always give rise to specific jurisdiction; there must be "something more." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). "'[S]omething more' is what the Supreme Court described as 'express aiming' at the forum state." Id.

If the plaintiff establishes the first two prongs regarding purposeful direction and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

### B. Improper Venue

If an action is filed in the "wrong division or district" a court may dismiss the action or, "if it be in the interest of justice" transfer the action to an appropriate district or division. 28 U.S.C. § 1406(a). In federal courts, the determination of where venue is appropriate "is governed entirely by statute." Zumba Fitness, LLC v. Brage, 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) (citing Leroy v. Great W. United Corp., 443 U.S. 173, 181 (1979)). When deciding a motion to dismiss for improper venue, unlike a Rule 12(b)(6) motion, the court need not accept the pleadings as true and may consider facts outside the pleadings. See R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Once a defendant raises an objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). To defeat a motion to dismiss for improper venue, the plaintiff needs only to make a prima facie showing of proper venue.

## IV. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Defendants argue that the Court lacks personal jurisdiction over them, and that the FAC should be dismissed because venue in this district is improper. The Court finds that it cannot exercise jurisdiction over defendants based on their contacts with California, but that it can exercise jurisdiction over defendants based on their contacts with the United States as a whole. Because this Court has personal jurisdiction over defendants, venue is also proper under the Copyright Act. 28 U.S.C. § 1400(a). For the reasons set forth herein, the Court denies defendants' motion to dismiss.

### A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff appears to concede there is no general jurisdiction over defendants. The Court therefore analyzes only whether it can exercise specific jurisdiction over defendants.

#### 1. Specific Jurisdiction in California

In <u>Washington Shoe Co. v. A-Z Sporting Goods, Inc.</u>, the Ninth Circuit reaffirmed its rule that personal jurisdiction in a copyright case could be justified under a theory of "individualized targeting." 704 F.3d 668, 676–679 (9th Cir. 2012) (<u>abrogation recognized by</u> <u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1067 ("Axiom") (9th Cir. 2017)). The premise of the theory is that the loss or harm of copyright infringement is felt by the owner of the copyright in both the location where the infringement takes place, and wherever the owner exercises control over the copyright, which for a corporation is usually its principal place of business. <u>Id.</u> (citing <u>Laws v. Sony Music Entm't, Inc.</u>, 448 F.3d 1134, 1137 (9th Cir.2006)). A loss occurs in the location where the owner exercises control of the copyright because the infringing act deprives the owner of the exclusive right to control the work. <u>Id.</u> Thus, if a defendant knew that a copyright existed, knew the forum of the copyright holder, and was alleged to have willfully infringed that copyright, then under a theory of individualized targeting the defendant knowingly harmed the plaintiff in the forum state. <u>Id.</u> at 678–79. Under this theory the Ninth Circuit found that Washington could exercise personal jurisdiction over an Arkansas retailer that sold copyright infringing shoes only in Arkansas, because the retailer continued to do so after receiving cease and desist letters from the copyright holder who it knew was headquartered in Washington. <u>Id.</u> at 679.

However, in <u>Axiom</u> the Ninth Circuit acknowledged that <u>Washington Shoe</u> had been abrogated by the Supreme Court's opinion in <u>Walden v. Fiore</u>, 134 S. Ct. 1115

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

(2014). Axiom, 874 F.3d at 1070. The Ninth Circuit explained that Walden had rejected the Ninth Circuit's theory of individualized targeting because, without more, it "impermissibly allowed a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Id. (quoting Walden, 134 S.Ct. at 1125). Walden "made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to the forum." Id. (quoting Walden, 134 S.Ct. at 1124–25). Individualized targeting may still remain relevant to the minimum contacts inquiry, but "it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what Walden requires." Id.

In Axiom a UK company sent a newsletter promoting rice protein products to 343 email addresses that contained the copyrighted logo of a California company that sells organic and chemical-free products made from, among other things, whole-grain brown rice. Id. at 1066-67. Plaintiff's counsel provided evidence that the 343 recipients of the email included at least 55 recipients with companies in California, including 14 with locations in Los Angeles County. Id. at 1070. However, the Ninth Circuit found this was insufficient to support finding personal jurisdiction after Walden because the analysis must "focus on the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. (quoting Walden, 134 S.Ct. at 1122). Without evidence concerning the residence of the 55 recipients and the relationship each of them has to their company such evidence was "too attenuated and isolated" to support the exercise of jurisdiction. Id. (citations and quotations omitted). In addition, the Ninth Circuit held that California was hardly the focal point of the newsletter or the harm suffered because only 10 of the recipients were physically located in California, most of its recipients were in Western Europe, and the defendant did not conduct business in California. Id. at 1070-71.

### (a) Purposeful Direction

The only element of purposeful direction the parties dispute is whether defendants expressly aimed their conduct at California. Defendants argue that they did not purposefully direct any activities towards California because they are not present in California, never targeted California customers, and operate entirely out of Canada. MTD at 12-14. Plaintiff argues that this element is satisfied because defendants have substantial marketing and sales in California, and regardless, willful infringement is sufficient. Opp'n at 11–13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Plaintiff argues that "a defendant's intentional acts are expressly aimed at California when the defendant intentionally violates the copyrights held by a California corporation." Opp'n at 11. Plaintiff misstates the individualized targeting theory, and Axiom recognized that this theory alone is not sufficient to establish express aiming towards California. The only allegedly infringing action plaintiff identifies that occurred after defendants were on notice of the existence of the copyright and plaintiff's location of California is an attempted purchase by plaintiff's law firm that was made after the MTD was filed. Anwandter Decl. ¶ 18, Ex. N. A purchase made by plaintiff's counsel after litigation has commenced cannot be used to support a finding of personal jurisdiction. See L.A. Gem. v. Ecommerce, 2017 WL 1535084, at *9 (citing Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered [for establishing purposeful availment].")). Even if such a purchase could demonstrate purposeful direction, after learning of the purchase from the Opposition the defendants cancelled the order and refunded the money. Nirav Suppl. Decl. ¶¶ 20–22. For these reasons, even if individualized targeting is still relevant to the minimum contacts analysis, plaintiff has not shown that willful infringement occurred.

Plaintiff's arguments for substantial marketing and sales are drawn from defendants' (1) use of Facebook's ability to target California as a market, (2) advertising and selling infringing products to customers in California, and (3) selling infringing products through their own websites and storefronts on websites like Facebook and Groupon. Opp'n at 12–13. Defendants do not dispute that they advertised the infringing products on Facebook, but do provide declarations stating that they have never targeted California. Nirav Decl. ¶ 17. In response however plaintiff fails to produce any evidence suggesting that defendants have targeted California with Facebook advertisements for the infringing products. Defendants also admit that they have sold some infringing products to California, although defendants estimate that California made up less than 1% of infringing sales. Id. ¶ 18. However, this 1% figure is suspect because defendants admit that it is not based on an actual review of sales records because defendants do not have sophisticated sales records and would instead have to examine them by hand. Id. Regardless of the percentage, the only evidence of actual sales of allegedly infringing products to California residents prior to the filing of the complaint are two purchases by plaintiff's law firm, Anwandter Decl. ¶¶ 10, 11, and eight sales defendants admit they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

were made through Groupon.[4]  However, plaintiff has admitted to making at least 2400 infringing sales.  Anwandter Decl., Ex. L at 88.  Even if the Court includes the sales to plaintiff's law firm, that is still only ten sales out of 2400.  Like the ten California residents who received the newsletter in Axiom, ten sales are simply too attenuated and isolated to suggest that California was the focal point of the sales and the harm suffered. Axiom, 874 F.3d at 1070.  Finally, the evidence shows that defendants used Facebook and Groupon only to advertise their products, but that all sales took place through their websites. Nirav Decl.¶ 16; Nirav Suppl Decl. ¶ 19.  Plaintiff has provided no evidence to suggest that a consumer could actually purchase the infringing goods from Facebook or Groupon.

Because there is no evidence that defendants targeted their advertising or made anything more than attenuated or isolated sales to California, defendants did not expressly target their activities towards California.  Defendants therefore did not purposefully direct their activities towards California.

### (b) Arising out of Defendant's Forum Related Conduct

A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum. See Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585 (1991).  The Ninth Circuit has adopted a "but for" test when assessing whether an action arises out of a defendant's contacts with the forum state. See, e.g., Panavision, Intern., L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir.1998) ("We must determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California").

Plaintiff argues that its claims for copyright infringement all arise from defendants' advertising contracts with the social media websites, Facebook in particular.  Opp'n at

---

[4] At oral argument counsel for defendants said that there was no evidence that sales had occurred through Groupon.  The Court notes that defendant Nirav admitted in his supplemental declaration that defendants sold infringing products to customers in California through Groupon.  Nirav Suppl. Decl. ¶ 19  ("An & Associates sold approximately 40 total units of the jewelry designs at issue through Groupon, only 8 of which were shipped to California.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

14. Even assuming that defendants' Facebook advertising was targeted towards California, many customers would have purchased infringing products by going to defendants' websites directly, or through some means other than Facebook. Plaintiff has not explained how their purchases arise from defendants' forum-related activity if they did not come through Facebook advertisements. But for defendants' Facebook advertising defendants may have sold fewer infringing products, but they certainly would have sold some infringing products. Plaintiff's claims therefore do not arise from defendants' Facebook advertising.

Finally, plaintiff could try to find specific jurisdiction in a California court based on defendants' direct sale and shipment of allegedly infringing products to customers in California. However, plaintiff has not provided an explanation for how a California court could exercise jurisdiction based on sales made to customers in other states. If the Canadian defendants sell and ship an infringing product to New York for example, that infringement has no contact with California. Plaintiff's claims therefore do not arise from defendants' sale and shipment of infringing products to California.

Because both theories miss a potentially substantial number of infringing sales, neither is a but for cause of plaintiff's claims. Plaintiff's claims therefore do not arise out of defendants' activities in California.

Plaintiff has failed to meet its burden on both the purposeful direction and arising under prongs of the test for specific jurisdiction test. Therefore, this Court cannot exercise personal jurisdiction over plaintiff's claims on the basis of defendants' contacts with California.

### 2. Jurisdiction Under Rule 4(k)(2)

Plaintiff argues in the alternative that if defendants are not subject to personal jurisdiction in California then they are subject to nationwide jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if three requirements are met:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Pebble Beach Co., 453 F.3d at 1159 (citations omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007).

It is undisputed that plaintiff's claims arise under federal law. The Court has explained why defendants are not subject to personal jurisdiction in California. In the Ninth Circuit a defendant bears the burden of identifying another state where they are subject to personal jurisdiction, and defendants have failed to identify any such state. Id. ("absent any statement from either Wärtsilä or Wärtsilä Finland that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met."). The only element of Rule 4(k)(2) in dispute is therefore whether this Court's exercise of personal jurisdiction over defendants would comport with Fifth Amendment's due process clause. Getz v. Boeing Co., 654 F.3d 852, 859 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(2) advisory committee's notes to 1993 amendment) (noting that Rule 4(k)(2) is governed by the due process clause of the Fifth Amendment rather than the Fourteenth Amendment). The Court therefore applies the test for specific jurisdiction described above to defendants using the United States as the relevant forum.

### (a) Purposeful Direction

The only element of the purposeful direction test the parties dispute is whether defendants expressly aimed their activities towards the United States. Reply at 14-15. In Axiom, the defendant's only contact with the United States was a single newsletter emailed to 80 recipients with companies in the United States (10 in California, 70 outside of California), but plaintiffs failed to explain the relationship between the recipients, their companies, the newsletter, and the United States. See Axiom, 874 F.3d at 1072. The Ninth Circuit held that it would violate due process to exercise personal jurisdiction under Rule 4(k)(2) because the defendant's contact with the United States was "[a]t best . . . scant, fleeting, and attenuated." Axiom, 874 F.3d at 1072 (quoting Holland Am. Line, 485 F.3d at 562). Here, the Canadian defendants target the United States with their advertising, employ fully interactive websites selling the infringing products that cater to customers in the United States, and ship the infringing products to the United States. On this record the Court easily finds that defendants targeted the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Defendants have fully interactive websites that are expressly aimed at customers in the United States. Anwandter Decl. Exs. G, H, N. On three occasions plaintiff's law firm had an employee order an infringing pendant from defendants' websites.[5] Anwandter Decl. ¶¶ 10, 11, 18. The webpage for the last pendant purchased states that the "deal" price (in U.S. dollars) is valid for U.S. and Canadian residents only, the pendant ships within 5-7 business days, cannot be delivered to Alaska or Hawaii, and shipping information must be provided at checkout and cannot be changed. Anwandter Decl. Ex. N, at 95. Although plaintiff did not provide defendants' webpage where the product is actually ordered, plaintiff did provide the order confirmation page. This page shows the customer's United States billing and shipping addresses, United States phone number (including Los Angeles area code), amount paid in U.S. dollars for both the product and shipping, and displays the customer's shipping address on Google Maps. Id. at 97. Each of these pieces of information on a Canadian website supports finding that defendants expressly aimed their activities towards the United States.

Defendants also targeted the United States through its nationwide advertising of the infringing products. Defendants admit they ran a global advertising campaign through Facebook's Canadian division, but state that they "did not specifically target California residents, or residents of any other location." Amar Decl. ¶ 17; Nirav Decl. ¶ 17. This however is contradicted by a video made by Facebook Canada. In the video, defendant Nirav begins by stating how last year defendants had $35 million in revenue, this year they were expecting to surpass $100 million in revenue, and 80% of their traffic and a majority of their conversions (first-time purchases by people browsing one of their sites) come from Facebook. Graham Decl., Ex. 1. He then explains that "[o]ur biggest challenge was to find a way to scale globally, we knew there was a significant opportunity in various different countries across the world. We just needed to find out a

---

[5] Defendants state that they removed all such jewelry from their websites upon receiving the FAC, Nirav Decl. ¶ 21, and that the allegedly infringing products were only sold on two of their websites, Anwandter Decl., Ex. L at 89. Plaintiff's firm then provided evidence that infringing product(s) were still for available for purchase from a third website of defendants even after defendants filed this MTD. Anwandter Decl. ¶ 18. While the Court does not use this attempted purchase to support its finding of personal jurisdiction, it does use screenshots of the transaction as evidence that defendants' websites are interactive and expressly aimed towards the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

strategy and a plan to reach those countries." Id. Towards the end of the video he also says "[t]he Facebook global targeting feature allowed us to scale like no other platform has." Id. Defendant Nirav confirmed in his supplemental declaration that he was referring to using Facebook's worldwide targeting feature to target entire countries. Nirav Suppl. Decl. ¶¶ 8-9. Confusingly, in the same declaration he confirms his earlier statement that defendants "did not specifically target California residents, or residents of any other location, through this advertising campaign." Id. ¶¶ 11, 16. Resolving factual disputes in plaintiff's favor, even disregarding the rest of the video and its animations, defendant Nirav's own words are sufficient to conclude that defendants targeted their Facebook advertising towards foreign countries, and the only plausible conclusion is that they targeted the United States. This is further supported by traffic statistics compiled by alexa.com, an Internet tracking service, which show that 85% of Boardwalkbuy.com's web traffic, and 54.2% of Florencescoveljewelry.com's web traffic comes from the United States.[6] Anwandter Decl. Ex. Q.

Defendants also shipped the allegedly infringing products directly to customers in the United States. The FAC alleges on information and belief that defendants have engaged in the nationwide sale and distribution of infringing products. E.g., FAC ¶¶ 13, 20. Defendants admit that all of their merchandise is shipped from Canada, and there is no evidence of a domestic distributor or other intermediary besides the company that actually transports the products. Amar Decl ¶ 10; Anwandter Decl. Exs. G, H, N. At this stage the Court must therefore conclude that defendants directly ship their products to customers in the United States. This is therefore not a case involving a "stream of commerce" theory of personal jurisdiction. E.g., Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 926 (U.S. 2011) (noting that the stream of commerce theory has been used to find specific jurisdiction in products liability cases involving an extensive chain of distribution between the consumer and the defendant manufacturer). Defendants did not manufacture the products in this case, and are instead the distributor that sold and shipped them directly to the customer. There is thus no question of whether it was foreseeable that defendants' products would end up in the United States, it was an

---

[6] Defendants object that the reports on their web traffic from alexa.com are hearsay. The Court finds that they fall within the exception for market reports. Fed. R. Evid. 803(17). Even if the Court were to conclude that the evidence were inadmissible, that would not change its conclusion under Rule 4(k)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

absolute certainty because defendants were the ones who shipped them. J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 883 (2011) (plurality opinion) ("it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.").

Because defendants' websites cater to people in the United States, they admit to targeting the United States with their advertising, and because they physically shipped all of the allegedly infringing products to the United States, the Court finds that defendants expressly aimed their activities towards the United States.

At oral argument counsel for defendants argued that even if there is sufficient evidence to find that defendant An & Associates purposefully directed its activities towards the United States, there was no evidence that defendants Amar and Nirav directed any activities towards the United States in their individual capacities. This misstates defendants' burden. On a motion to dismiss for lack of personal jurisdiction the "uncontroverted allegations in the complaint must be taken as true." Schwarzenegger, 374 F.3d at 800. Moreover, the Supreme Court has rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). The FAC alleges that defendants Amar and Nirav are each a "principal, guiding spirit, and/or central figure in in defendant AN [sic] & Associates and has control over the day to day operations thereof . . . ." FAC ¶¶ 7, 8. Having found that defendant An & Associates purposefully directed its activities towards the United States, this allegation is sufficient to establish plaintiff's prima facie showing of jurisdiction over defendants Amar and Nirav. Because defendants do not cite to any evidence that disputes these allegations, the Court must accept them as true. Therefore, the Court can properly exercise jurisdiction over defendants Amar and Nirav in their individual capacities.

### (b) Arising out of Defendant's Forum Related Conduct

Plaintiff's claims necessarily arise out of the exact same products it alleges defendants sold, advertised, and shipped to consumers in the United States. It is clear that plaintiff's claims arise out of defendants' conduct related to the United States.

### (c) Reasonableness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

Defendants must present a compelling case that the balance of the seven factors show that it would be unreasonable for this court to exercise personal jurisdiction. Schwarzenegger, 374 F.3d at 802 (quotations omitted). The only facts that weigh in defendants' favor are that they and much of the evidence are all in Canada. However, Nirav, An & Associates' custodian of records, states that defendants do not have sophisticated sales records, and he will have to review them one by one in order to provide the relevant information for defendants' sales. Nirav Decl. ¶¶ 3, 18. This is implausible for a company that expects to have $100 million in revenue this year, but it does suggest that any burdens from litigating in a foreign jurisdiction related to the evidence will be dwarfed by problems of defendants' own recordkeeping. In addition, the mere fact that defendants are foreign without more is not enough to show that exercising personal jurisdiction would be unreasonable, otherwise it would always prevent a suit against a foreign national in a United States court. Roth, 942 F.2d at 623–24 (quotations omitted). This is particularly true for Rule 4(k)(2), which only applies to foreign defendants because domestic defendants will always be subject to at least one state's general jurisdiction.

Similarly, Rule 4(k)(2) only exists because the United States has an important interest in ensuring that federal laws are enforced in federal court against foreign defendants who might otherwise evade state long arm statutes. Fed. R. Civ. P. 4(k) advisory committee's notes to 1993 amendment (citing Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 111 (1987) (suggesting that Congress or "those who propose the Federal Rules of Civil Procedure" should create almost verbatim what became Rule 4(k)(2)).

For the foregoing reasons defendants have failed to present a compelling reason for why the exercise of jurisdiction would be unreasonable.

### B.     Defendants' Motion to Dismiss Due to Improper Venue

In most actions, venue is governed by the general venue statute, 28 U.S.C. § 1391. However, claims for copyright infringement are unique in that, in such claims, venue is governed by the special venue provisions of the Copyright Act. See Goldberg v. Cameron, 482 F. Supp. 2d 1136, 1143 (N.D. Cal. Feb. 27, 2007) ("The venue of suits for infringement of copyright is not determined by the general provision governing suits in the federal district courts, rather by the venue provision of the Copyright Act, [28 U.S.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV17-2417-CAS(JEMx) | Date | December 6, 2017 |
|---|---|---|---|
| Title | L.A. GEM & JEWELRY DESIGN, INC. v. AN & ASSOCIATES CO. INC. ET AL. | | |

§ 1400(a)]."); <u>Zumba Fitness</u>, 2011 WL 4732812, at *1 ("All claims—with the exception of the copyright claim—are governed by the general venue statute, 28 U.S.C. § 1391") (emphasis added).  The venue provision of the Copyright Act, 28 U.S.C. § 1400(a), provides, in pertinent part: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."  The Ninth Circuit "interprets this provision to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."  <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1126 (9th Cir. 2010).  In other words, the analysis of venue under the Copyright Act is, in large part, coterminous with the analysis on a motion to dismiss for lack of personal jurisdiction.  Because the Court has found that it can exercise personal jurisdiction over defendants, all defendants can be found in this district, and venue in this district is therefore proper under 28 U.S.C. § 1400(a).

## V.      CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to dismiss.

IT IS SO ORDERED.

|  | 00 | : | 13 |
|---|---|---|---|
| Initials of Preparer | | CL | |